## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| FREDDIE CAGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. |
| WESCO INSURANCE COMPANY, | ) | |
| KING'S WAY USA TRANSPORT, | ) | 2:21-cv-00052-RWS |
| INC., FIRST TIME TRANSPORT, | ) | |
| INC. and ISIDRO ALEX LOBAINA | ) | |
| LOYOLA, OLD REPUBLIC INS. | ) | |
| CO., ONE WAY HAULING | ) | |
| EXPRESS CO., AC NATIONWIDE | ) | |
| TRANSPORT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT
## WESCO'S MOTION FOR SUMMARY JUDGMENT

### *Introduction*

This is a truck wreck case.  Truck driver Loyola rear-ended Kent Wilson's

vehicle on I-85.  Plaintiff claims he was so near Loyola as it was colliding with

Wilson that he had to swerve into the median to avoid a collision.  He has sued the

driver, Loyola, and three trucking companies with whom Loyola was affiliated in

tort owing to personal injuries he claims he sustained in the collision.  He has also

sued Wesco Insurance Company ("Wesco") in contract under Georgia's direct action statute, O.C.G.A. § 40-2-140(d)(4). To recover under the direct action statute, Plaintiff must prove that Wesco owes coverage under its policy. Wesco does not owe coverage under the liability portion of the policy, and owing to a settlement obtained between Wesco other claimants involved in the same wreck, there is no additional money available under the MCS90 bond Wesco issued to Defendant First Time Transport, Inc. ("First Time") with its policy. Wesco insured no other Defendant. Therefore, Wesco is entitled to summary judgment.

### Statement of Facts

On July 16, 2019, Isidro Loyola was driving a 2014 Freightliner pulling a trailer containing plastic boxes (non-hazardous property). *Affidavit of Isidro Loyola*, attached as Exhibit A, at ¶ 5. He was southbound on I-85 in Jackson County, Georgia when he rear-ended a car driven by Kent Wilson. *Id.* Plaintiff contends he swerved into the median to avoid this collision and was himself injured as his car bumped across a very rough median. *See* Complaint, at ¶¶ 48-54. Loyola was driving under the DOT authority of First Time Transport, Inc. ("First Time"). *Affidavit of John Pecoraro*, attached as Exhibit B, at ¶ 2; *see also* photo of placard taken at scene by

plaintiff, attached as Exhibit C.  Plaintiff sued Loyola and First Time in this action

contending they were negligent in their operation of the tractor trailer at the time of

the accident.  *See* Complaint.

On the day of the accident, First Time was the named insured under a Motor

Carrier Liability insurance policy issued by Wesco (the "Policy").  Affidavit of John

Claxton, attached as Exhibit E, at ¶ 2.  A verified copy of the Policy is attached as

Exhibit D.[1]  First Time was a motor carrier registered with the U.S. Department of

Transportation ("DOT") to operate as an interstate carrier.   Affidavit of John

Claxton, attached as Exhibit E, at ¶ 3.  Wesco had issued its Policy, No.

WMC1650585 00 to First Time on September 24, 2018.   Exhibit D, at p.

WESCO000119.  The Policy was to remain in effect until September 24, 2019.  *Id.*

Wesco issued a policy to no other Defendant besides First Time.

The insuring agreement for the liability coverage under the Policy is first set

out in the Motor Carrier Coverage Form, CA 00 20 10 13.  Exhibit D, beginning at

WESCO000146.  Under Section II – Covered Autos Liability Coverage, the insuring

agreement provides as follows:

---

[1] In his affidavit, John Claxton of Wesco's underwriting department certifies that the Policy attached as
Exhibit D is a true and correct copy of the motor carrier liability policy it issued to First Time and which
was in effect at the time of the subject accident.  Exhibit E, at ¶ 2.

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

*Id.* Limits of $1,000,000 per accident were provided for covered injury claims under the Policy. *Id.*, at WESCO000123.

Under this insuring agreement, an "insured" must be legally obligated to pay damages for there to be coverage under the Policy. The Motor Carrier Coverage Form first defines the term "insured" as used in the Policy under a "Who Is An Insured" provision. *Id.*, at WESCO000147. But that language is modified by endorsement, specifically the WHO IS AN INSURED – MODIFIED – TRUCKERS endorsement ("WHO IS AN INSURED Endorsement") to the Policy, form CA990417 0714. *Id.*, at WESCO000197. The WHO IS AN INSURED endorsement changes who is an "insured" under the Policy as follows:

> The following are "insureds":
>
> A.    You for any covered "auto" only when the covered "auto" is driven by an approved driver described in paragraph "B" of this section II.A.1.
>
> B.    Any driver authorized as a commercial truck driver while Operating covered "auto" with Your knowledge and consent under your operating authority." No coverage will apply to any driver newly placed in service after the policy begins until you

> report that driver to us and we advise you in writing that he/she is acceptable to us and that he/she is covered under the policy. Coverage on any such driver newly placed in service will become effective as of the date and time we advise you he/she is acceptable and that they are covered by the policy and not before. Subject to the reporting methods outlined and agreed to in the notification procedure outline signed by the insured and the agent prior to coverage being affected under the policy.

> "Only such drivers listed as of the date this policy begins, on the schedule in the original application signed by you, and not otherwise excluded are covered as of the date this policy begins.

*Id.* A true and correct copy of the application for insurance submitted to Wesco by First Time and its agent is attached as Exhibit 1 to the Affidavit of John Claxton, Exhibit E. When First Time applied for coverage with Wesco, it was required to identify the drivers it wanted to be covered under the Policy. Affidavit of John Claxton, attached as Exhibit E, at ¶ 5. In its application, First Time identified only one driver to be covered by the Policy, an individual named Evelio Perez. *Id.* On October 15, 2018, First Time asked the Roger Pena Tito be added as a driver, but Wesco refused to approve him. *Id.* On October 25, 2018, First Time asked to add Christian Guardado as a driver. *Id.* Wesco approved and added him and, at First Time's request, dropped Evelio Perez as a covered driver. *Id*. Thus, at the time of

the collision, the only insured driver under the Policy was Christian Guardado. *Id.* ¶ 6. Loyola was not an insured driver under the Policy. *Id.*

When a driver who is not covered under the Policy is involved in a loss, the named insured itself (First Time) is also not an insured for that loss under the Policy. WHO IS AN INSURED endorsement, Exhibit D, p. WESCO000197, at ¶ A. Defendant Loyola was never an approved driver under the Policy because First Time never reported him as a new or added driver the Policy **and because** Wesco never approved him as required under ¶ B of the WHO IS AN INSURED endorsement. *Id.; see also* Affidavit of John Claxton, attached as Exhibit E, at ¶ 6. Therefore, First Time also is not an "insured" under the Policy for the claims asserted by the plaintiff.

There are other reasons the Policy affords no insurance coverage for plaintiff's claims. The coverage applies only in the instance of injury or damage "resulting from the ownership, maintenance or use of a covered 'auto'". Exhibit D, at p. WESCO000146. Here, however, neither the tractor involved in the accident nor the trailer it was pulling were covered "autos" under the Policy. On the first page of the Motor Carrier Coverage Form, the Policy defines which vehicles are coverage autos under the Policy:

**Section I – Covered Autos**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

Exhibit D, at WESCO000031.[2]  Item Two of the Policy's Declarations indicates that the Covered Auto Symbol for First Time's liability coverage under the Policy is "67".  Exhibit D, at p. WESCO000145.

Moving back to the Motor Carrier Coverage Form, the Policy indicates that symbol 67 refers to "Specifically Described 'Autos", or "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage and 'trailers' you don't own while attached to any power unit described in Item Three)."    Exhibit D, at p. WESCO000145.  Item Three of the Policy's Declarations, found between Item Two and Item Four, at p. WESCO000127, identifies only one power unit that is covered under the Policy.  This is a 2013 Freightliner tractor, VIN FUJGLBG0DSBY6298.

---

[2] "'Auto' means:  1. A land motor vehicle, 'trailer' or semitrailer designed for travel on public roads; or 2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."  Exhibit D., Section VI – Definitions, at ¶ B.  The "mobile equipment" exception does not apply.  *Id.*, at ¶ K.  Exhibit D, at p. WESCO000158.

*Id.*; *see also* Affidavit of John Claxton, Exhibit E, at ¶ 7. When First Time applied for coverage it asked that a 2013 Freightliner, VIN FUJGLBG0DSBY6298, be covered, and the Policy was issued covering this vehicle. *Id.* First Time made covered vehicle changes under the Policy not reflected in the declarations pages:

- On October 15, 2018, it deleted the 2013 Freightliner and added a 2012 Freightliner, VIN ending in 1936. *Id.*

- On February 1, 2019, it deleted the 2012 Freightliner and added a 2010 International, VIN ending in 5222. *Id.*

- On February 22, 2019, it deleted the 2010 International and added a 2012 Freightliner, VIN ending in 1796. *Id.*

Thus, at the time of the collision, only the 2012 Freightliner with VIN ending 1796 was a covered vehicle under the Policy. *Id.*, at ¶ 8.

But the tractor Defendant Loyola was driving at the time of the accident was a 2014 Freightliner, VIN 1FUJGLBG6ELFW5091. Affidavit of Isidro Loyola, Exhibit A, at ¶ 4; Affidavit of John Pecoraro, Exhibit B, at ¶ 2; *see also* police report attached as Exhibit F. This vehicle is not listed on the Declarations Pages, Item Three, and no one from First Time ever attempted to add it to the Policy as a covered

auto either before or after the wreck.  Affidavit of John Claxton, Exhibit E, at ¶ 8.

The trailer is likewise not listed in the Item Three Declarations.  Exhibit D, ¶

WESCO000127.  Only those trailers being pulled by the covered 2012 Freightliner

are additional covered autos under the Policy.  *Id.*  No covered auto under the Policy

was pulling the trailer involved in the subject collision.  *Id.*  Since the accident

involving Loyola and the plaintiff did not result from the operation, maintenance or

use of a covered auto, as required in the insuring agreement, there is no insurance

coverage for plaintiff's injuries and damages under the Policy.

### *Argument and Citation of Authority*

## Standard of Review

In reviewing a motion for summary judgment, the court must construe all

"facts and inferences from those facts in the light most favorable to the" non-moving

party.  *Congress Street Properties, LLC v. Garibaldi's, Inc*., 314 Ga. App. 143, 145,

723 S.E.2d 463, 465 (2012).  Once a party moves for summary judgment, the non-

moving party must respond with evidence in the record which reveals evidence

sufficient to create a jury issue on at least one essential element of plaintiff's case.

*Season All Flower Shop, Inc. v. Rorie*, 323 Ga. App. 529, 530, 746 S.E.2d 634, 636

(2013).  "The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court."  *George L. Smith II World Congress Center Auth. v. Soft Comdex, Inc.*, 250 Ga. App. 461, 462, 550 S.E.2d 704, 705 (2001).

## Construction of the Policy and Its Terms

"The construction of a contract is a matter of law for the court."  *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334, 380 S.E.2d 686, 687 (1989).  A policy is deemed ambiguous if it contains applicable language that has two or more reasonable constructions.   *Id.*, at 334-335, 380 S.E.2d at 687; *see also First Acceptance Ins. Co. of Ga. v. Hughes*, 305 Ga. 489, 493-494, 826 S.E.2d 71, 75 (2019) (ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations).  Where the language of an insurance policy is explicit and unambiguous, the courts can only enforce the terms and conditions of the contract as expressed by the parties.  *Thornton v. Ga. Farm Bur. Mut. Ins. Co.*, 287 Ga. 379, 382, 695 S.E.2d 642, 644 (2010); *New York Life Ins. Co. v. Thompson*, 45 Ga. App. 638, 640, 165 S.E. 847, 848 (1932) (where the

language is unambiguous, and but one reasonable construction of the contract is possible, the court must enforce it as made).

### The Plaintiff Cannot Prove
### That Any of His Injuries or Damages
### Are Covered Under the Policy

In a direct action, the plaintiff does not sue the insurer as a joint tortfeasor but rather on a theory of contract, namely to establish that the insurance contract affords coverage in the event liability and damages are determined in tort against the truck driver and or the trucking company. *See  Southern Drayage v. Williams*, 216 Ga. App. 721, 724 at n.1, 455 S.E.2d 418, 420 at n.1 (1995); *Thomas v. Bobby Stevens Hauling Contractors*, 165 Ga. App. 710, 711, 713-714, 302 S.E.2d 585, 587, 588-589 (1983); *Jackson v. Sluder*, 256 Ga. App. 812, 814, 569 S.E.2d 893, 895 (2002). Under the direct action statute, the plaintiff must prove not only that there is coverage under the policy, but also the preconditions for coverage under the policy – the insureds' legal liability (i.e., negligence of the insureds, causation and damages). *Glenn McClendon Trucking Co. v. Williams*, 183 Ga. App. 508, 509-510, 359 S.E.2d 351, 353 (1987) (proof of coverage under the policy is not sufficient by itself).

Plaintiff in this action cannot recover against Wesco under the direct action statute because he cannot show there is coverage under the Policy.

Here, even if Wesco were to admit that Plaintiff can establish that Loyola and First Time were negligent, that he sustained injuries as a result of Loyola's actions, and that their negligence was the proximate cause of his injuries and damages, he still cannot recover under the Policy's insuring agreement because he cannot prove that the trucker defendants are insureds under the Policy. *See, supra*, at 4-6. As shown above in the Policy's terms, to be an insured driver under the Policy, the driver defendant either had to have been listed in the coverage application submitted by the insured, or the insured had to have added him with Wesco's approval after the Policy was issued. *Id.* Plaintiff cannot make this showing. Only Evelio Perez is listed in the application as a driver to be covered under the Policy. *Supra*, at 5; *see also* Exhibit E(1). No one from First Time reported to Wesco after issuance of the Policy that Isidro Loyola was to be added to the Policy as a covered driver, and Wesco certainly never approved such an addition to the Policy in writing (instead, after a series of changes, only Christian Guardado was an insured driver under the Policy at the time of the accident). Exhibit E, at ¶ 6. Therefore, Loyola was never an "insured" under the Policy.

Since Loyola was not an insured under the Policy, First Time was not an insured under the Policy for this loss. This is because the WHO IS AN INSURED endorsement, at ¶ A says that First Time is an insured for only losses occurring while an approved driver is operating a covered auto. Exhibit D, WHO IS AN INSURED endorsement, p. WESCO000197, at ¶ A; *see also, supra*, at 5-6.

Plaintiff also cannot establish coverage for his injuries and damages under the Policy as required  to obtain a valid judgment against Wesco under the direct action statute because his injuries and damages did not result from "the ownership, maintenance or use of a covered 'auto'". The Policy covered only a single, specifically identified tractor:  a 2012 Freightliner with VIN ending 1796. *See, supra*, at 6-9. The Policy's language in this regard is easy to follow and unambiguous. Trailers were covered autos under the Policy if they were being pulled by the covered power units (or tractors). *Id.* During the accident, however, Loyola was not driving the covered 2012 Freightliner. A 2014 Freightliner not identified in the Policy's declarations was pulling the trailer.

The 2014 Freightliner was never identified in the coverage application and it was never identified in the Policy as a covered auto. Exhibit E, at ¶ 8. Therefore, any trailer it was pulling was also not a covered auto under the Policy. Exhibit D, at

Page 13

p. WESCO000125.  What is more, First Time never added the 2014 Freightliner to the Policy as a covered auto at any point after the Policy was issued, not even after the wreck.  Exhibit E, at ¶ 8.  For example, no effort was made by First Time to say within 30 days after the wreck that the 2014 Freightliner was put into service as a substitute vehicle because the covered 2012 Freightliner was out of service.  *Id.*; *see also* Policy, Exhibit D, at p. WESCO000146 (providing for coverage of unlisted vehicles if newly acquired if reported to Wesco within 30 days of acquisition or where used as a substitute for a disabled listed vehicle).

Since coverage under the Policy is afforded only when the injuries and damages result from the ownership, maintenance or use of a covered auto, and since neither the 2014 Freightliner involved in this wreck nor the trailer it was pulling were covered autos, there can be no coverage under the Policy's insuring agreement for the wreck.

## The MCS-90
## Has Been Exhausted

While there is no coverage under the insuring agreement of the Policy, neither a duty to indemnify nor a duty to defend, Wesco did owe payment obligations under the MCS-90 bond it issued as an endorsement to the Policy, obligating itself to pay

up to $750,000 per accident for any claims for injury not otherwise covered by the coverage terms of the insuring agreement. As part of a settlement, however, Wesco has paid other claimants involved in this same accident $750,000.[3] What is more, since an insurer does not owe a duty to defend under an MCS-90, *Harco Nat'l Ins. Co. v. Bobac Trucking, Inc.*, 107 F.3d 733, 736 (9th Cir. 1997); *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 677 (5th Cir. 2001), Wesco has exhausted its obligations under the MCS-90 and owes no further obligations to the plaintiff, to any defendant in this case, or to any other individual or entity. It is therefore entitled to summary judgment.

Much of interstate trucking law is federal. *See* the U.S. Motor Carrier Act ("MCA"), Pub. L. No. 96-296, 94 Stat. 793, approved 1980-07-01. All motor carriers seeking to operate with federal DOT authority must register with the Department of Transportation to obtain operating authority. 49 U.S.C. § 13906. A motor carrier seeking registration to obtain such authority is required to file with the Department a bond, an insurance policy, or other type of security approved by the Secretary of the Department. 49 U.S.C. § 13906(a)(1). What is more, regulations

---

[3] A copy of the release executed by Mr. and Mrs. Kent Wilson in favor of Wesco, Loyola and First Time in exchange for Wesco's payment of $750,000 under its MCS-90 obligation, is attached to the Affidavit of John Pecoraro, Exhibit B, as Exhibit 1.

authorized by the Secretary of the Department of Transportation under the MCA require any insurance policy filed with the motor carrier's application for operating authority to contain an MCS-90 endorsement.  49 C.F.R. § 387.7(a) and 337.9.  For vehicles for hire hauling non-hazardous property in interstate commerce, such as the vehicle Defendant Loyola was operating in this case, the minimum MCS-90 financial responsibility requirement is $750,000 per accident.  *Id.*, at § 337.9(1).

The MCA requires both an insurance policy AND an MCS-90 for the protection of the motoring public  The MCS-90 endorsement creates a suretyship by the insurer to protect the public when the accompanying insurance policy does not provide coverage to the insured.  *Grange Indem. Co. v. Burns*, 337 Ga. App. 532, 533-534, 788 S.E.2d 138, 140 (2016); *see also Canal Ins. Co. v. Coleman*, 625 F.3d 244, 245 (5th Cir. 2010); and Jenkins & Miller, *Georgia Automobile Insurance Law*, § 45, at pp. 389-391 (2020-2021 ed.).  It is provided as a safety net to enhance the odds that a federally prescribed minimum coverage is available to the injured if coverage is otherwise non-existent or excluded under an insurance policy.  *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 878 (10th Cir. 2009); *Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1st Cir. 1995).

The federal government, which controls the financial responsibility rules applicable to interstate motor carriers, determined that for non-hazardous loads of property being shipped in interstate commerce, the insurer had to make a minimum of $750,000 per accident available to the innocent motoring public under the MCS-90 in the event there was no coverage under the insuring agreements of their policies. 49 C.F.R. § 337.9(1).

In this case, Wesco added to its policy an MCS-90 endorsement with the required bond coverage up to $750,000 per accident. A copy of the MCS-90 is part of Exhibit D, at pp. WESCO000219-221. Specifically, the MCS-90 reads as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

*Id.* The *Grange* case, *supra*, contains a nice analysis of how to determine whether the MCS-90 applies to a given loss. The *Grange* Court determined that for the MCS-

90 to apply, any judgment to be recovered against the "insured" had to result from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.[4]  This meant, summarizing, that the use of the motor vehicle under the "insured's" DOT operating authority, per Section 30's terms, had to be in interstate commerce. *Grange Indem. Co. v. Burns*, *supra*, at 536-537, 788 S.E.2d at 142.

Here, it is established that Loyola's trip involved the transporting of non-hazardous property over state lines such that he was engaged in interstate commerce when the wreck occurred.  Affidavit of Isidro Loyola, attached as Exhibit A.  Thus, the MCS-90 does apply and Wesco's obligations are limited to those set forth in the MCS-90 endorsement -  i.e., payment up to $750,000 per accident.

Multiple claims arise from Loyola's alleged negligence.  Kent Wilson, the driver of the car Loyola rear-ended was seriously injured.  His wife had a loss of consortium claim.  The Plaintiff in this case contends he was hurt as his car bounced roughly in the median when he went to avoid Loyola's tractor trailer.  His wife also

---

[4] Since Section 29, codified at 49 USC § 10927, dealt largely with brokers and freight forwarders, Judge Ray in Grange determined that Section 30, codified at 49 USC § 31139(b) was the law that pertained to the MCS-90 issued to a dry freight hauler like Loyola and First Time in this case.  *Grange Indem. Co. v. Burns*, *supra*, at 536-537 & n.3, 788 S.E.2d at 142 & n.3.

presented a loss of consortium demand to Wesco. Under the MCS-90's terms, Wesco had exposure only under the MCS-90 for all of these claims up to $750,000 since there is no coverage for them under the Policy's insuring agreement. Since Wesco paid and exhausted its MCS-90 bond obligations in resolving other claims arising from this accident, it can owe no other or further obligation to the Plaintiff in this case or, even, to Loyola or First Time.

### *Conclusions*

Wesco owes no insurance coverage to any party to this case under the insuring agreement of its Policy because Defendant Loyola was not an approved driver under the Policy at the time of the wreck. Since Loyola was not an approved driver under the Policy at the time of the wreck, neither he nor First Time are "insureds" under the Policy for this wreck. Additionally, the 2014 Freightliner Loyola was using at the time of the wreck was not a "covered auto" under the Policy, nor was the trailer it was pulling. The Policy provides coverage only for bodily injury or property damage resulting from the use of a covered auto. Since the plaintiff's claims do not arise out of defendants' use of covered autos under the Policy, there is no coverage

for their claims under the Policy's insuring agreement. Thus, Wesco owes no indemnity obligations whatsoever under the insuring agreement of the Policy.

Under the Policy's MCS-90, a federally required bond added to the Policy by endorsement, Wesco does owe obligations of payment to those injured by the negligence of Defendants Loyola and First Time in their use of the uninsured 2014 Freightliner up to $750,000 per accident despite there being no coverage under the Policy's insuring agreement. But Wesco has exhausted that coverage by having paid other claimants $750,000. It can owe no further obligations under the MCS-90.

Since Wesco owes no further obligations under either its Policy or the MCS-90, Plaintiff has no valid claims against Wesco under Georgia' direct action statute, O.C.G.A. § 40-2-140, and Wesco owes Loyola and First Time no continuing duty to defend them in this or any other action. There are no set of facts by which Plaintiff

can recover in this action against Wesco.  Wesco is, therefore, entitled to summary

judgment, and this Court should grant Wesco's Motion for Summary Judgment.


*/s/ William Allred*
William Allred, #000320
Elizabeth G. Howard, 100118
*Attorneys for Wesco Ins. Co.*

**BARRICKMAN, ALLRED & YOUNG, LLC**
5775 Glenridge Dr, NE, Ste E-100
Atlanta, GA  30328
404-790-0123 – Allred
404-538-1225 – Howard
wsa@bayatl.com
egh@bayatl.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the within and foregoing **_BRIEF
IN SUPPORT OF WESCO'S MOTION FOR SUMMARY JUDGMENT_** to all
counsel of record by using the CM/ECF system and directing service to:

Mark W. Alexander, Esq.
Andrew Q. Gould, Esq.
Steward, Melvin & Frost, LLP
P.O. Box 3280
Gainesville, GA 30503
malexander@smf-law.com
agould@smf-law.com
*Attorneys for Plaintiff*

Danny Ellis, Esq.
Truck Wreck Justice, PLLC
1419 Market Street
Chattanooga, TN 37402
danny@truckwreckjustice.com
*Attorney for Plaintiff*

Brian F. Williams, Esq.
Jonathan M. Adelman, Esq.
Waldon Adelman Castilla Hiestand & Prout
900 Cir 75 Pkwy NW Ste 1040
Atlanta, GA 30339
bwilliams@wachp.com
jadelman@wachp.com
*Attorney for First Transport and Isidro Alex Lobaina Loyola*

Robert A. Luskin
Tracy A. Yaun
Goodman McGuffey, LLP
3340 Peachtree Rd NE Ste 2100
Atlanta, GA  30326
rluskin@gm-llp.com
tyaun@gm-llp.com
*Attorneys for Grange Prop. & Cas. Ins. Co.*

Reynolds E. Pitts, Jr.
Fain, Major & Brennan, PC
5605 Glenridge Dr NE Ste 900
Atlanta, GA  30342
rpitts@fainmajor.com
*Attorneys for Progressive Mountain Ins. Co.*

Terry O. Brantley
Benjamin Yancey
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St NE Ste 300
Atlanta, GA  30306
terry.brantley@swiftcurrie.com
ben.yancey@swiftcurrie.com
*Attorneys for Defendant Old Republic Ins. Co.*

via USPS, postage prepaid to the following parties:

King's Way USA Transport, Inc.
c/o Isabel Cordero
7635 Abbott Ave Apt 8
Miami Beach, FL  33141
*Pro Se to date*

One Way Hauling Express Company
c/o Ms. Isabel Cordero
16213 NW 84th PL
Miami Lakes, FL  33016-6671
*Pro Se to date*

AC Nationwide Transport, LLC
c/o Mr. Ariel Calzada
16213 NW 84th PL
Miami Lakes, FL  33016-6671
*Pro Se to date*

Mr. Ariel Calzada
16213 NW 84th PL
Miami Lakes, FL  33016-6671
*Pro Se to date*

Ms. Isabel Cordero
16213 NW 84th PL
Miami Lakes, FL  33016-6671
*Pro Se to date*

This 5th  day of August, 2021.


*/s/ William Allred*
William Allred