IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FREDDIE CAGLE,                                )
                                              )
        Plaintiff,                            )
                                              )
        v.                                    )
                                              )    CIVIL ACTION
WESCO INSURANCE COMPANY,                      )    FILE NO. 2:21-cv-00052-RWS
KING'S WAY USA TRANSPORT,                     )
INC., FIRST TIME TRANSPORT,                   )
INC., ISIDRO ALEX LOBAINA                     )
LOYOLA,         OLD     REPUBLIC              )
INSURANCE    CO.,    ONE    WAY              )
HAULING    EXPRESS    CO.,    AC             )
NATIONWIDE TRANSPORT, LLC                     )
ARIEL   CALZADA   and   ISABEL               )
CORDERO,                                      )
                                              )
        Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT WESCO'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF DEFENDANT
WESCO'S MOTION FOR SUMMARY JUDGMENT**

## **Wesco's Rush to Payment**

Based on its ill-informed belief, Wesco made a series of unwise decisions in

a concerted effort to deny Plaintiff Cagle any financial recovery for his injuries

caused by Wesco's insured, Defendant First Time. Despite its best efforts, Wesco

has failed to exhaust its obligations for the wreck, and is required to satisfy any final judgment[1] Plaintiff Cagle obtains against Wesco's insured, Defendant First Time.

## Statement of Facts

### Defendant Loyola Driving for Defendants' Trucking Businesses

Defendant King's Way is the owner of the tractor and trailer involved in the wreck. (Doc. 1, ¶ 33)[2] Defendant Isabel Cordero is the president of Defendant King's Way. (Doc. 1, ¶ 34) Defendant Ariel Calzada is the husband of Defendant Isabel Cordero. (Exhibit J-6, Deposition of Loyola 28:14-20, 29:5-8) Defendants Cordero and Calzada operate multiple trucking businesses in Florida. (Exhibit J-7, Deposition of Loyola 28:1-13) Defendant Isidro Alex Lobaina Loyola worked as a truck driver out of Florida. (Exhibit J-8, Deposition Loyola 8:6-10, 11:15-19) Defendant Loyola would go to Defendants Cordero's and Calzada's truck yard and place of business, and drive the truck and trailer either Defendant Cordero or Defendant Calzada assigned to him. (Exhibit J-9, Deposition Loyola 42:8-13, 73:7-10)

For the trip that is the subject of this case, Defendant Ariel Calzada and/or Defendant Isabel Cordero assigned Defendant Loyola and an unknown driver a

---

[1] The obligation extends up to the limits prescribed in the MCS-90 endorsement for each motor vehicle.

[2] The clerk filed an entry of default against Defendant King's Way on June 8, 2021.

tractor and trailer. (Exhibit J-2, Deposition of Loyola 49:4-9) Defendant Loyola and an unknown driver were operating the tractor and trailer under the DOT authority for Defendant First Time. (See Doc. 83-1, photo of placard taken at scene by Plaintiff, Exhibit C.)

## **The Wreck**

The unknown driver drove the assigned truck from Florida to South Carolina to secure a load of nonhazardous plastics. (Exhibit J-3, Deposition of Loyola 44:14-20, 57:2-6 and 139:2-5) Defendant Loyola and the unknown driver were to haul the load of nonhazardous plastics to California. (Exhibit J-10, Deposition of Loyola, p 45:4-6) Eventually, Defendant Loyola took over the driving duties. (Exhibit J-4, Deposition of Loyola 77:19-21)

On July 16, 2019, while Defendant Loyola was driving on I-85 south in Jackson County, Georgia, traffic in front of Defendant Loyola was stopped. (Exhibit J-4, Deposition of Loyola 77:19-21) Defendant Loyola was unable to stop the tractor and trailer he was driving, and ran into the back of a van driven by Kent Wilson. (Exhibit J-4, Deposition of Loyola 77:19-21) After the impact with Mr. Wilson's van, the trailer Defendant Loyola was hauling flipped over on its side and skidded down I-85. (Exhibit J-5, Deposition of Loyola 92:19-23) As the tractor and trailer slid toward Plaintiff Cagle's vehicle, also traveling south on I-85, Plaintiff Cagle

attempted to avoid the wreck by driving into the grassy median of the interstate, causing serious injuries to Plaintiff Cagle. (Doc. 1, Complaint ¶ 53)

## Two Lawsuits

Kent Wilson filed a lawsuit on January 14, 2021, against multiple defendants, including Defendants Loyola and First Time in *Wilson v. Wesco Insurance Company*, Civil Action No. 21-C-00283-S2, State Court of Georgia, Gwinnett County ("the *Wilson* case"). (Exhibit C, Kent Wilson's Complaint) Mr. Wilson also named Wesco under Georgia's direct action statute, alleging "Defendant WESCO provided **liability insurance coverage** to Defendant First Time for this collision under Policy Number WMC1650585-00" (Exhibit C, Kent Wilson's Complaint, ¶ 15) (emphasis added). On March 5, 2021, Plaintiff Cagle subsequently filed this civil action against Wesco and other Defendants arising from the incident that occurred on July 16, 2019 on I-85 south. (Doc. 1)

## Wesco's Default in the *Wilson* Case

In the *Wilson* case, Mr. Wilson served Wesco with his lawsuit on January 19, 2021. Wesco did not timely file its answer and went into default. (Exhibit D, Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default) By going into default, Wesco effectively waived any insurance coverage defense and established liability insurance coverage for the wreck involving Mr. Wilson.

After Wesco's default, Wesco and Mr. Wilson filed a Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default on March 10, 2021, requesting "an Order permitting them ninety (90) days, through June 7, to mediate or negotiate the claim." (Exhibit D, Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default) Five days later, on March 15, 2021, the Gwinnett County State Court granted the Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default, finding "Defendant Wesco is in default" but providing the parties "ninety (90) days, through June 7, to mediate or negotiate the claim." (Exhibit E, Order on Joint Motion for Extension of Time for Defendant Wesco to File Motion to Open Default). Wesco and Mr. Wilson scheduled a mediation for May 19, 2021. (Exhibit K, Affidavit of Andrew Gould, ¶ 5)

In Plaintiff Cagle's civil action, on April 12, 2021, Plaintiff's counsel and counsel for Wesco[3] participated in the Rule 26(f) preliminary planning conference in this case. (Exhibit K, Affidavit of Andrew Gould, ¶ 6) Plaintiff's counsel and counsel for Wesco discussed settlement potential, as required, and noted "a possibility of settlement before discovery." (Exhibit K, Affidavit of Andrew Gould, ¶ 7) At the Rule 26(f) preliminary planning conference, Defense counsel for Wesco indicated the parties in the *Wilson* case scheduled a mediation at Henning Mediation

---

[3] Wesco's counsel in this civil action also represents Wesco in the *Wilson* case.

to take place on May 19, 2021, and invited Plaintiff Cagle and Plaintiff's counsel to the mediation. (Exhibit K, Affidavit of Andrew Gould, ¶ 8) Plaintiff's counsel informed Wesco's counsel and Henning Mediation that Plaintiff would attend the mediation scheduled for May 19, 2021. (Exhibit K, Affidavit of Andrew Gould, ¶ 9)

Approximately one month later, on May 10, just nine (9) days before the mediation, counsel for Wesco informed Plaintiff's counsel that Plaintiff Cagle and Plaintiff's counsel were **not** to attend the mediation, contrary to the discussion at the preliminary planning conference. (Exhibit K, Affidavit of Andrew Gould, ¶ 10) Wesco's counsel provided no alternative dates to discuss settlement prior to discovery, as reflected in the Joint Preliminary Discovery Plan. (Exhibit K, Affidavit of Andrew Gould, ¶ 11)

### Wesco and Mr. Wilson Get Together

Wesco and Mr. Wilson settled the *Wilson* case at the mediation on May 19, 2021. (Exhibit K, Affidavit of Andrew Gould, ¶ 12) Apparently, at the mediation, Wesco and Mr. Wilson reached some agreement and collaborated to structure their settlement in a way to attempt to exclude Plaintiff Cagle's claims against Wesco. Rather than simply executing a release, Wesco and Mr. Wilson devised a series of steps designed to thwart the public policy to protect the public from risks created by motor carriers' operations. *See generally Carolina Casualty Insurance Co. v. Yeates*,

584 F.3d 868, 875 (10th Cir. 2009). On May 25, 2021, following the mediation between Wesco and Mr. Wilson, Wesco and Mr. Wilson filed a Consent Motion for Opening of Default. (Exhibit F, Consent Motion for Opening of Default) On May 26, 2021, the Court granted the Consent Motion for Opening of Default. (Exhibit H, Consent Order Opening Default) On May 27, 2021, Wesco filed its Answer in the *Wilson* case. (Exhibit I, Wesco's Answer in the *Wilson* case) After taking these steps, on June 7, 2021, the Wilson Plaintiffs executed a limited liability release releasing Defendants Wesco, Loyola and First Time in exchange for Wesco paying the Wilson Plaintiffs $750,000. (Doc. 83-1, Exhibit 1 of Exhibit B). Wesco attempted to unilaterally structure the settlement to suggest Wesco was paying the Wilson Plaintiffs from the MCS-90 endorsement or surety bond. (Doc. 83, Exhibit 1 of Exhibit B) Wesco took these steps so it could bring its motion for summary judgment in this action. However, Wesco's scheme in the *Wilson* case does not permit Wesco to escape liability to Plaintiff Cagle pursuant to the MCS-90 endorsement.

## **Standard of Review**

Plaintiff agrees and adopts Defendant Wesco's summary judgment standard of review.

Additionally, "[u]nder Georgia law, insurance policies are liberally construed in favor of coverage." *Evanston Ins. Co. v. Dillard House, Inc.*, Civil Action No.

2:16-cv-249-RWS, 2017 WL 3498953, at *6 (N.D. Ga.) (quoting *Barrett v. Nat'l.*

*Union Fire Ins. Co. of Pittsburgh*, 304 Ga. App. 314, 320-21 (2010)).

## Legal Authority and Argument

### I.  Liability coverage.

For purposes of this response to Defendant Wesco's motion for summary

judgment, Plaintiff Cagle admits that neither the tractor or trailer involved in the

wreck, nor Defendant Loyola, were specifically listed on Wesco's liability policy of

insurance to Defendant First Time. However, Plaintiff Cagle contests Wesco's

liability under Wesco's MCS-90 Endorsement.

### II.  Wesco cannot exhaust the MCS-90 endorsement because the contractual and statutory conditions had not triggered Wesco's obligation to pay.

To protect the public, the Federal Motor Carrier Safety Administration

requires interstate motor carriers to obtain and maintain a minimum amount of

financial responsibility for the motor carrier. *See* 49 C.F.R. § 387.1. A motor carrier,

through a policy of insurance, surety bond or endorsement, must maintain the

minimum amount of coverage until termination. *See* 49 C.F.R. § 387.7. Under 49

C.F.R. § 387.9, the minimum amount of the surety bond for nonhazardous property

is $750,000.

Here, Wesco had issued a liability policy to Defendant First Time with policy limits of $1,000,000. (Doc. 83-1, Exhibit D, WESCO000123). To ensure compliance with the minimum financial responsibility requirements of the Federal Motor Carrier Safety Administration, Wesco's policy of insurance also had a MCS-90 endorsement which provided separate limits of liability of $750,000 in the event there was no coverage or insufficient coverage. (Doc. 83-1, Exhibit D, WESCO000219-WESCO000220). The liability policy and MCS-90 endorsement have distinctly separate definitions and conditions for payment. (Doc. 83-1, Exhibit D). More specifically, the liability policy and MCS-90 endorsement have different conditions for when payment under each is required.

### Liability Policy

Under the liability policy, Wesco agrees to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." (Doc. 83-1, Exhibit D, WESCO000146) Wesco's liability policy also states, "[w]e may investigate and settle any claim or 'suit' as we consider appropriate." (Doc. 83-1, Exhibit D, WESCO000147)

## MCS-90 Endorsement

Under the MCS-90 endorsement, however, Wesco agrees "to pay, within the limits of liability described herein, **any final judgment** recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." (Doc. 83-1, Exhibit D, WESCO000220) (emphasis added).

This surety bond's (MCS-90 endorsement) purpose is to protect the public from risks created by motor carriers' operations. *See generally Carolina Casualty Insurance Co. v. Yeates*, 584 F.3d 868, 875 (10th Cir. 2009). The surety bond (MCS-90 endorsement) is designed to ensure the collectability of **any judgment**. *See Id*. (emphasis added).  In essence, the surety bond (MCS-90 endorsement) is a "safety net in the event other insurance is lacking." *See Yeates,* 584 F.3d at 878; *see also Kline v. Gulf Insurance Company*, 466 F3f 450 (6th Cir. 2006); *Canal Insurance Company v. Underwriters at Lloyd's London*, 435 F.3d 431, 442 n. 4 (3rd Cir. 2006); *Canal Insurance Company v. Distribut. Servs. Inc.*, 320 F.3d 488, 490 (4th Cir. 2003).

As referenced above, the MCS-90 endorsement attached to the Wesco policy states, "[t]he insurer (the company) agrees to pay, within the limits of liability described herein, any **final judgment** recovered against the insured…" (Doc. 83-1, WESCO000220) (emphasis added) The policy clearly indicates when the MCS-90 endorsement would be triggered—any final judgment. Wesco is well aware of this fundamental requirement for MCS-90 liability. In *Militello v. ICAN Logistics, Inc.,* Wesco sought summary judgment to avoid its MCS-90 liability, in part, because a final judgment had not been entered against its named insured. The Court agreed with Wesco's position that "the MCS-90 endorsement **cannot** be triggered **unless and until** [the plaintiff] obtains a negligence judgment against [the named insured]." Civil Action No. CIV-17-290-HE, 2018 WL 1750743, at *3 (W.D. Okla. Apr. 11, 2018) (emphasis added). This contractual language is consistent with the regulatory scheme envisioned by the Federal Motor Carrier Safety Administration.

"It follows from the regulatory scheme and the text of the endorsement that the surety obligation is triggered only when the underlying insurance policy does not provide coverage *and* either (1) no other insurance policy is available to **satisfy the judgment against the motor carrier**, or (2) the motor carrier's insurance coverage is insufficient to meet the federally-mandated minimum level." (emphasis added) *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 884 (10th Cir. 2009); *see also*

*Distrib. Servs., Inc.,* 320 F.3d at 490; *Larsen Intermodal Servs., Inc.,* 242 F.3d at 672. This regulatory scheme shifts the risk of nonpayment from the injured party to the MCS-90 insurer. *Id.*[4] Contrary to this public policy, Wesco, the MCS-90 insurer, seeks to shift the responsibility of nonpayment to Plaintiff Cagle, the injured party.

In an attempt to be clever, Wesco colluded with Mr. Wilson's counsel during the May 19 mediation and the Wilson Plaintiffs agreed to provide Wesco the opportunity to open Wesco's default and file an answer. Wesco seeks to avoid its responsibility to Plaintiff Cagle by claiming it has "exhausted its obligations under the MCS-90 and owes no further obligations to the Plaintiff" by unilaterally labeling its settlement with the Wilson Plaintiffs as a payment from the MCS-90 bond. (Doc. 83, at 15; see Doc. 83-1, Exhibit 1) Yet, when the Wilson Plaintiffs executed the limited liability release, the conditions for payment from the MCS-90 bond had not occurred because Wesco was not satisfying any judgment against Defendant First Time.

Wesco could have settled the Wilson Plaintiffs' "claim or suit" against Defendant First Time under Wesco's liability insurance policy without the need of a judgment. Notably, when Wesco mediated and settled the case with the Wilson

---

[4] After payment of the judgment, this risk shifting public policy permits the insurer to seek reimbursement from the motor carrier/insured. *Id.* (Doc. 83-1, WESCO000220)

Plaintiffs, Wesco was in default and the Wesco liability insurance policy covered the Wilson Plaintiffs' claims. Wesco's efforts to open a default and file an answer were of no consequence to the Wilson Plaintiffs, but are a transparent attempt to procedurally sidestep its MCS-90 obligations to Plaintiff Cagle.

Wesco's attempt to manipulate its liability under the MCS-90 endorsement appears to be a matter of first impression. However, by analogy, just as a plaintiff may not structure a settlement to avoid payment of an ERISA subrogation lien, Wesco should not be allowed to select a single favored plaintiff then structure settlement proceeds to escape its financial obligations to Plaintiff Cagle. *See generally Diamond Crystal Brands, Inc. v. Wallace*, 2010 WL 1525536, *7 (N.D. Georgia 2010) (*quoting Wright v. Aetna Life Insurance*, 110 F.3d 762, 765, n.3 (11th Cir. 1997) ("Since Aetna was not a party to the settlement agreement, that agreement's purported allocation of damages does not govern the district court's determination. To hold otherwise would allow [the covered individual] and the [tortfeasor] to control Aetna's reimbursement rights."); *Moore v. Blue Cross and Blue Shield of the Nat'l Capital Area and CapitalCare*, 70 F.Supp.2d 9, 30 (D.D.C. 1999) ("An ERISA plan participant can not unilaterally allocate settlement proceeds to something other than medical expenses in order to evade subrogation…"). Unlike under its liability policy where Wesco is explicitly given the ability to settle claims

without the necessity of a judgment, under the MCS-90 endorsement, Wesco should not be permitted to unilaterally allocate its minimum financial responsibility to exclude Plaintiff Cagle in the absence of a final judgment.

The simple truth is, no final judgment was entered in the *Wilson* case that triggered payment under Wesco's MCS-90 endorsement at the time Wesco chose to settle with and pay the Wilson Plaintiffs. Absent a final judgment, Wesco paid the Wilson Plaintiffs at its own peril, and Wesco's hasty decision to pay the Wilson Plaintiffs and exclude Plaintiff Cagle should not discharge Wesco's responsibility to Plaintiff Cagle. Therefore, this Court should deny Wesco's motion for summary judgment because Wesco's obligations to Plaintiff Cagle remain under the MCS-90 endorsement.

### III.  <u>Alternatively, Wesco has not exhausted all the applicable MCS-90 sureties.</u>

### <u>The Tractor</u>

The MCS-90 endorsement defines a "motor vehicle" as a "land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof." (Doc. 83-1, WESCO000220) (emphasis added) The 2014 Freightliner tractor Defendant Loyola was operating at the time of the wreck is a motor vehicle as defined by the MCS-90 endorsement. The MCS-90 endorsement requires Wesco to

pay any final judgment recovered against Defendant First Time for liability resulting

from the negligent operation or use of motor vehicles subject to the financial

responsibility requirements of the Federal Motor Carrier Safety Administration.

(Doc. 83-1, WESCO000220) The 2014 Freightliner tractor is a commercial motor

vehicle as defined by the Federal Motor Carrier Safety Regulations, 49 C.F.R.,

§ 390.5, and subject to the financial responsibility requirements of the Federal Motor

Carrier Safety Administration. Wesco has liability for any judgment arising from

Defendant First Time's negligent operation or use of the 2014 Freightliner tractor

under the MCS-90 endorsement. (Doc. 83-1, WESCO000220) Wesco, prior to

judgment, appears to acknowledge its liability for Defendant First Time's operation

and use of the 2014 Freightliner tractor. Wesco claims it paid $750,000 to the Wilson

Plaintiffs from the MCS-90 endorsement for the tractor:

> Q.    All right. And you all -- and Wesco paid out to the other Plaintiffs
>       under its MCS-90 for the truck or the tractor in this case; is that
>       right?
> A.    That's correct.

(Exhibit I, Deposition of John Pecoraro 18:22-25)

## The Trailer

Even if Wesco's claim that it paid the Wilson Plaintiffs under its MCS-90 for

the tractor is true, Wesco's obligations under the MCS-90 endorsement do not end

with the tractor. Like the tractor, the trailer involved in the wreck is also a "motor

vehicle" as defined by the MCS-90 endorsement. Like the tractor, the trailer

involved in the wreck is also a commercial motor vehicle as defined by the Federal

Motor Carrier Safety Regulations, 49 C.F.R., § 390.5, which Wesco admits:

> Q.    All right.  A commercial motor vehicle is anything that's 10,001
>        pound, correct?
> A.    Yes.
> Q.    All right.  And a trailer's more than 10,001 pound empty?
> A.    Yes.
> Q.    All right.  So, therefore, it would qualify as a commercial motor
>        vehicle under the Federal Motor Carrier Safety Regulations?
> A.    Yes.

(Exhibit B-1, John Claxton Deposition 30:23-31:11)

Like the tractor, the trailer is also a commercial motor vehicle subject to the financial

responsibility requirements of the Federal Motor Carrier Safety Administration.

Like the tractor, Wesco also has liability for any judgment arising from Defendant

First Time's negligent operation or use of the trailer under the MCS-90 endorsement.

*Herrod* v. *Wilshire Insurance Company*, 2012 WL 4820722 (10th Cir. 2012)

and *Fairmont Specialty Insurance Company v. 103012 Ontario, Inc.*, 2011 WL

3651333 (N.D. Ind. 2011), arising in different circuits, contain a detailed discussion

of MCS-90 endorsements and the financial responsibility minimums required by the

Motor Carrier Act. In *Herrod*, a motor carrier (DAT) owned the tractor, and leased

the trailer involved in a fatal collision. The leasor of the trailer owned a policy of

insurance that contained a MCS-90 endorsement. The Court found that DAT's

settlement payment of a judgment (concerning the negligent operation or use of the tractor) did not release the MCS-90 insurer of the trailer from its independent obligations under its MCS-90 endorsement. *See Herrod v. Wilshire Insurance Company*, 2012 WL 4820722 (10th Cir. 2012) While *Fairmont* also addresses multiple motor carriers and multiple MCS-90 obligations, the Court held that a MCS-90 endorsement insurer could not evade its obligation to satisfy a judgment despite the payment of other applicable MCS-90 endorsements.[5] *See Fairmont Specialty Insurance Company v. 103012 Ontario, Inc.*, 2011 WL 3651333 (N.D. Ind. 2011).

In this case, Wesco has two MCS-90 surety bond obligations: one for the tractor and one for the trailer. Where two MCS-90 obligations apply, both MCS-90 obligations have to pay. *See Herrod v. Wilshire Insurance Company*, 2012 WL 4820722 (10th Cir. 2012); *Fairmont Specialty Insurance Company v. 103012 Ontario, Inc.*, 2011 WL 3651333 (N.D. Ind. 2011).

Wesco's payment to the Wilson Plaintiffs, which by Wesco's own admission Wesco made under its MCS-90's obligations for the tractor, does not reduce or eliminate Wesco's independent MCS-90 obligations arising from the negligent

---

[5] Interestingly, in both *Herrod* and *Fairmont*, the courts discuss the need for a final judgment as a condition precedent to the obligations under the MCS-90 endorsement.

operation or use of the trailer. Wesco's payment to the Wilson Plaintiffs, even if premature, does not exhaust Wesco's MCS-90 obligations to satisfy any judgment arising from Defendant First Time's negligent operation or use of the trailer.

This 20th day of October, 2021.

Respectfully submitted,

**TRUCK WRECK JUSTICE, PLLC**

***/s/ Danny R. Ellis, Esq.***
Georgia Bar No. 924074
danny@truckwreckjustice.com
1419 Market Street
Chattanooga, TN 37402
Telephone: (423) 265-2020
Fax: (423) 265-2025


**STEWART, MELVIN & FROST, LLP**

***/s/ Mark Alexander, Esq.***
Georgia Bar No. 008930
malexander@smf-law.com
**Andrew Q. Gould, Esquire**
Georgia Bar No. 826368
agould@smf-law.com
P.O. Box 3280
Gainesville, GA 30503
Telephone:(770) 536-0101
Fax: (678) 207-2002
***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.4.A, I certify that on this date, I served upon the attorneys of record for all parties via email as agreed by all parties in writing under FRCP 5(b)(2)(E) Plaintiff's Response to Defendant Wesco's Motion for Summary Judgment and Brief in Support of Defendant Wesco's Motion for Summary Judgment.

I further certify that this Certificate of Service of Discovery was prepared in Times New Roman 14pt font and otherwise complies with the Local Rule 5.1 and was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record for all parties.

| | |
|---|---|
| Brian F. Williams, Esq.<br>bwilliams@wachp.com<br>Jonathan M. Adelman, Esq.<br>jadelman@wachp.com<br>Waldon Adelman Castilla Hiestand & Prout<br>900 Cir 75 Pkwy NW, Ste. 1040<br>Atlanta, GA 30339<br><br>*Attorneys for First Time Transport and Isidro Alex Lobaina Loyola* | Robert A. Luskin, Esq.<br>rluskin@gm-llp.com<br>Tracy A. Yaun, Esq.<br>tyaun@gm-llp.com<br>Goodman McGuffey, LLP<br>3340 Peachtree Rd. NE, Ste. 2100<br>Atlanta, GA 30326<br><br>*Attorneys for Grange Property & Casualty Insurance Co.* |
| Reynolds E. Pitts, Jr., Esq.<br>rpitts@fainmajor.com<br>Fain, Major & Brennan, PC | Terry O. Brantley, Esq.<br>Terry.brantley@swiftcurrie.com<br>Benjamin Yancey, Esq. |

5605 Glenridge Dr. NE, Ste. 900
Atlanta, GA 30342

*Attorneys for Progressive Mountain Ins. Co.*

Ben.yancey@swiftcurrie.com
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St. NE, Ste. 300
Atlanta, GA 30306

*Attorneys for Defendant Old Republic Ins. Co.*

King's Way USA Transport, Inc.
c/o Isabel Cordero
7635 Abbott Ave., Apt 8
Miami Beach, FL 33141
*Pro Se to date*

One Way Hauling Express Company
c/o Isabel Cordero
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

AC Nationwide Transport, LLC
c/o Ariel Calzada
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

Ariel Calzada
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

Isabel Cordero
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

Respectfully submitted on October 20, 2021.

 */s/ Danny R. Ellis*_____
DANNY R. ELLIS