## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| FREDDIE CAGLE,<br><br>    Plaintiff,<br><br>    v.<br><br>WESCO INSURANCE COMPANY, KING'S WAY USA TRANSPORT, INC., FIRST TIME TRANSPORT, INC., ISIDRO ALEX LOBAINA LOYOLA, OLD REPUBLIC INSURANCE CO., ONE WAY HAULING EXPRESS CO., AC NATIONWIDE TRANSPORT, LLC ARIEL CALZADA and ISABEL CORDERO,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION<br>) FILE NO. 2:21-cv-00052-RWS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S RESPONSE TO DEFENDANT WESCO'S STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUES REMAIN TO BE TRIED IN SUPPORT OF DEFENDANT WESCO'S MOTION FOR SUMMARY JUDGMENT

Plaintiff files this response to Wesco Insurance Company's ("Wesco") Statement of Material Facts as to Which No Genuine Issues Remain to Be Tried in Support of Defendant Wesco's Motion for Summary Judgment (Doc. 83-10). Pursuant to the Northern District of Georgia's local rule 56.1, the Plaintiff would submit the following:

-1-

1.

**STATEMENT:** On July 16, 2019, Defendant Isidro Loyola ("Loyola") was driving a 2014 Freightliner, VIN 1FUJGLBG6ELFW5091, pulling a trailer containing plastic boxes (non-hazardous property) southbound on I-85 in Jackson County, Georgia, when he rear-ended a car driven by the plaintiff. Affidavit of Isidro Lobaina Loyola, attached to Brief as Exhibit A, at ¶ 5; *see also* Complaint, at ¶¶ 49-50.

**RESPONSE:** Plaintiff denies Defendant Loyola rear-ended a car driven by Plaintiff. Plaintiff admits Defendant Loyola rear-ended a car driven by Mr. Kent Wilson. Pursuant to LR 56.1(B)(2)(a)(2), the following citation to evidence shows where Defendant Loyola rear-ended a car driven by Mr. Wilson:

- Wesco admitted Defendant Loyola rear-ended Mr. Wilson's van. (Exhibit C, Mr. Wilson's Complaint, ¶ 23; and Exhibit A, Wesco Answer in Mr. Wilson's case, ¶ 23)

2.

**STATEMENT:** Loyola was hauling his load from either Georgia or South Carolina to California and was, therefore, engaged in interstate commerce at the time of the wreck. Affidavit of Isidro Lobaina Loyola, Exhibit A, at ¶¶ 5-6.

**RESPONSE:** Plaintiff denies. This trip originated in Florida, and to the extent Wesco's assertion creates the inference Defendant Loyola was the sole driver for the trip, Plaintiff denies. Pursuant to LR 56.1(B)(2)(a)(2), the following citation to evidence directly refutes that Defendant Loyola was the sole driver or that the trip originated in Georgia or South Carolina:

- Defendant Loyola testified at his deposition that the trip began in Florida where an unknown driver began the trip while Defendant Loyola was in the sleeper berth. (Exhibit J, Deposition of Loyola, 48:2-13 and 59:9-10)

- Defendant Loyola testified he did not remember the name of the other driver. (Exhibit J-1, Deposition of Loyola, 48:2-13)

3.

**STATEMENT:** Loyola was driving under the DOT authority of First Time Transport, Inc. ("First Time"). Affidavit of John Pecoraro, attached to Brief as Exhibit B, at ¶ 2; *see also* photo of placard taken at scene by Plaintiff, attached to Brief as Exhibit C.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

4.

**STATEMENT:** Plaintiff sued Loyola and First Time in this action contending they were negligent in their operation of the tractor trailer at the time of the accident and in other particulars. *See* Complaint [Doc. 1].

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

5.

**STATEMENT:** On the day of the accident, First Time was the named insured under a Motor Carrier Liability insurance policy ("Policy") issued by Wesco. Affidavit of John Claxton, attached to Brief as Exhibit E, at ¶ 2. Wesco verified that First Time was a motor carrier registered with the U.S. Department of Transportation ("DOT") to operate as an interstate carrier. Affidavit of John Claxton, Exhibit E, ¶ 3 (Mr. Claxton likewise verifies that Exhibit D is a true and correct copy of the Policy, *id*., at ¶ 2).

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

6.

**STATEMENT:** Wesco had issued the Policy, No. WMC1650585 00, to First Time on September 24, 2018, and the Policy was to remain in effect until September

24, 2019. Affidavit of John Claxton, Exhibit E, ¶ 2; *see also* Policy, Exhibit D, at WESCO000119.

    **RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

7.

    **STATEMENT:** The insuring agreement for the liability coverage under the Policy is first set out in the Motor Carrier Coverage Form, CA 00 20 10 13. *Id*., at WESCO000146.

    **RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

8.

    **STATEMENT:** Under Section II – Covered Autos Liability Coverage, the insuring agreement provides as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

*Id*. Limits of $1,000,000 per accident were provided for covered injury claims under the policy. *Id*., at WESCO00123.

    **RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

9.

    **STATEMENT:** The Motor Carrier Coverage Form first defines the term "insured" as used in the Policy under a "Who Is An Insured" provision. *Id*., at

WESCO000147. But that language is modified by endorsement, specifically the WHO IS AN INSURED – MODIFIED – TRUCKERS endorsement ("WHO IS AN INSURED Endorsement"), form CA990417 0714. *Id.*, at WESCO000197. The WHO IS AN INSURED endorsement changes who is an "insured" under the Policy as follows:

> The following are "insureds":
>
> A. You for any covered "auto" only when the covered "auto" is driven by an approved driver described in paragraph "B" of this section II.A.1.
>
> B. Any driver authorized as a commercial truck driver while Operating covered "auto" with Your knowledge and consent under your operating authority." No coverage will apply to any driver newly placed in service after the policy begins until you report that driver to us and we advise you in writing that he/she is acceptable to us and that he/she is covered under the policy. Coverage on any such driver newly placed in service will become effective as of the date and time we advise you he/she is acceptable and that they are covered by the policy and not before. Subject to the reporting methods outlined and agreed to in the notification procedure outline signed by the insured and the agent prior to coverage being affected under the policy.
>
> "Only such drivers listed as of the date this policy begins, on the schedule in the original application signed by you, and not otherwise excluded are covered as of the date this policy begins.

*Id*.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

10.

**STATEMENT:** A true and correct copy of the application for insurance submitted to Wesco by First Time and its agent is attached as Exhibit 1 to the affidavit of John Claxton, Exhibit E to the Brief.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

11.

**STATEMENT:** When First Time applied for coverage with Wesco, it was required to identify the drivers it wanted to be covered under the Policy. In its application, First Time identified only one driver to be covered by the Policy, an individual named Evelio Perez. Affidavit of John Claxton, Exhibit E, at ¶¶ 5-6 and Exhibit 1 to Claxton affidavit. On October 15, 2018, First Time asked that Roger Pena Tito be added as a driver, but Wesco refused to approve him. Affidavit of John Claxton, Exhibit E, at ¶¶ 5-6. On October 25, 2018, First Time asked to add Christian Guardado as a driver. *Id*. Wesco approved and added him and, at First Time's request, dropped Evelio Perez as a covered driver. *Id*.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

12.

**STATEMENT:** When a driver who is not covered under the Policy is involved in a loss, the named insured itself (First Time) is also not an insured for

that loss under the Policy. WHO IS AN INSURED endorsement, Exhibit D, p. WESCO000197, at ¶ A.

**RESPONSE:** Plaintiff will deny as it is legal conclusion.

13.

**STATEMENT:** Defendant Loyola was never an approved driver under the Policy, *id.*, at ¶ A, because First Time never reported him as a new or added driver the Policy **and because** Wesco never approved him as required under ¶ B of the WHO IS AN INSURED endorsement. *Id.; see also* Affidavit of John Claxton, Exhibit E, at ¶¶ 5-6.

**RESPONSE:** Plaintiff will admit for purposes of this motion that Defendant Loyola was not approved as a driver as required under ¶ B of the WHO IS AN INSURED endorsement. The remaining portion is denied as a legal conclusion.

14.

**STATEMENT:** Per the insuring agreement of the Policy, the liability coverage applies only in the instance of injury or damage "resulting from the ownership, maintenance or use of a covered 'auto'". Exhibit D, at p. WESCO000146.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

15.

**STATEMENT:** Neither the tractor involved in the accident nor the trailer it was pulling were covered "autos" under the Policy because they were neither identified in the Policy's Declarations nor added to the Policy at any point after the Policy was issued. Affidavit of John Claxton, Exhibit E, at ¶¶ 7-8.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion..

16.

**STATEMENT:** On the first page of the Motor Carrier Coverage Form, the Policy defines which vehicles are coverage autos under the Policy:

**Section I – Covered Autos**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

Exhibit D, at WESCO000145.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

17.

**STATEMENT:** Item Two of the Policy's Declarations indicates that the Covered Auto Symbol for First Time's liability coverage under the Policy is "67". Exhibit D, at p. WESCO000123.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

18.

**STATEMENT:** The Motor Carrier Coverage Form of the Policy indicates that symbol 67 refers to "Specifically Described 'Autos", or "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage and 'trailers' you don't own while attached to any power unit described in Item Three)." Exhibit D, at p. WESCO000145.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

19.

**STATEMENT:** Item Three of the Policy's Declarations, found between Item Two and Item Four, at p. WESCO000127, identifies only one power unit that is covered under the Policy. This is a 2013 Freightliner tractor, VIN FUJGLBG0DSBY6298. *Id.* When First Time applied for coverage it asked that the 2013 Freightliner, VIN FUJGLBG0DSBY6298, be covered, and the Policy was issued covering this vehicle. Policy, at p. WESCO000127. But, First Time later made covered vehicle changes under the Policy:

- On October 15, 2018, it deleted the 2013 Freightliner and added a 2012 Freightliner, VIN ending in 1936. Affidavit of John Claxton, Exhibit E, at ¶ 7.

- On February 1, 2019, it deleted the 2012 Freightliner and added a 2010 International, VIN ending in 5222. *Id.*

- On February 22, 2019, it deleted the 2010 International and added a 2012 Freightliner, VIN ending in 1796. *Id.*

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion, but Plaintiff denies any inference that Defendant First Time contacted Wesco. Pursuant to LR 56.1(B)(2)(a)(2), the following citations to evidence directly refute Defendant First Time contacting Wesco directly:

- Wesco only received updates on autos to be replaced from Sirix, the insurance broker for Defendant First Time. (See Exhibit B, Deposition of John Claxton 45:23-47:7)

20.

**STATEMENT:** The tractor Defendant Loyola was driving at the time of the accident was a 2014 Freightliner, VIN 1FUJGLBG6ELFW5091 (the "2014 Freightliner"). Affidavit of John Pecoraro, Exhibit B, at ¶ 2; Affidavit of Isidro Lobaina Loyola, at ¶ 4.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

21.

**STATEMENT:** The 2014 Freightliner is not listed on the Declarations Page's Item Three, and no one from First Time ever attempted to add it to the Policy as a covered auto either before or after the wreck. Affidavit of John Claxton, Exhibit E, at ¶ 8. The 2012 Freightliner, VIN ending in 1796 was the only covered vehicle under the Policy at the time of the subject collision. *Id.*, at ¶¶ 7, 8.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

22.

**STATEMENT:** Only those trailers being pulled by the 2012 Freightliner covered in the Policy are covered autos under the Policy. Affidavit of John Claxton, Exhibit E, at ¶¶ 7, 8.

**RESPONSE:** Plaintiff will admit for purposes of summary judgment motion.

23.

**STATEMENT:** The MCS-90 endorsement to the Policy is located at WESCO000219-221, and it limits the bond's coverage to $750,000 per accident, as does Federal law. *Id.*

**RESPONSE:** Plaintiff will deny as it is legal conclusion.

## STATEMENT OF ADDITIONAL FACTS THAT ARE MATERIAL AND PRESENT A GENUINE ISSUE FOR TRIAL

Pursuant to Local Rule 56.1.B(2)(b), the Plaintiff submits this statement of additional facts that are material and present a genuine issue for trial.

### General Facts

1.

Defendant King's Way is the owner of the tractor and trailer involved in the wreck.

- Doc. 1 ¶ 33

2.

Defendant Isabel Cordero is the President of Defendant King's Way.

- Doc. 1 ¶ 34

3.

Defendant Ariel Calzada is the husband of Defendant Isabel Cordero.

- Exhibit J-6, Deposition of Loyola 28:14-20, 29:5-8

4.

Defendants Cordero and Calzada operate multiple trucking businesses in Florida.

- Exhibit J-7, Deposition of Loyola 28:1-13

5.

Defendant Loyola worked as a truck driver out of Florida.

- Exhibit J-8, Deposition of Loyola 8:6-10, 11:15-19

6.

Defendant Loyola would go to Defendants Cordero's and Calzada's truck yard and place of business, and drive the truck and trailer either Defendant Cordero or Defendant Calzada assigned to him.

- Exhibit J-9, Deposition of Loyola 42:8-13, 73:7-10

7.

For the trip that is the subject of this case, Defendant Ariel Calzada and/or Defendant Isabel Cordero assigned Defendant Loyola and an unknown driver a tractor and trailer.

- Exhibit J-2, Deposition of Loyola 49:4-9

8.

The unknown driver drove the truck from Florida to South Carolina to secure a load of nonhazardous plastics.

- Exhibit J-3, Deposition of Loyola 44:14-20, 57:2-6 and 139:2-5

9.

Defendant Loyola and the unknown driver were to haul the load of nonhazardous plastics to California.

- Exhibit J-10, Deposition of Loyola, p 45:4-6

10.

Eventually, Defendant Loyola took over the driving duties.

- Exhibit J-4, Deposition of Loyola 77:19-21

11.

On July 16, 2019, while Defendant Loyola was driving on I-85 south in Jackson County, Georgia, traffic in front of Defendant Loyola was stopped.

- Exhibit J-4, Deposition of Loyola 77:19-21

12.

Defendant Loyola was unable to stop the tractor and trailer he was driving, and ran into the back of a van driven by Kent Wilson.

- Exhibit J-4, Deposition of Loyola 77:19-21

13.

After the impact with Mr. Wilson's van, the trailer Defendant Loyola was hauling flipped over on its side and skidded down I-85.

- Exhibit J-5, Deposition of Loyola 92:19-23

14.

As the tractor and trailer slid toward Plaintiff Cagle's vehicle, also traveling south on I-85, Plaintiff Cagle attempted to avoid the wreck by driving into the grassy median of the interstate, causing serious injuries to Plaintiff Cagle.

- Doc. 1, Complaint ¶ 53

15.

Wesco had issued a liability policy to Defendant First Time with policy limits of $1,000,000.

- Doc. 83-1, Exhibit D, WESCO000123

16.

To ensure compliance with the minimum financial responsibility requirements of the Federal Motor Carrier Safety Administration, Wesco's policy of insurance also had a MCS-90 endorsement which provided separate limits of liability of $750,000 in the event there was no coverage or insufficient coverage.

- Doc. 83-1, Exhibit D, WESCO000219-WESCO000220

17.

The liability policy and MCS-90 endorsement have distinctly separate definitions and conditions for payment.

- Doc. 83-1, Exhibit D

-16-

18.

Wesco's liability policy also states, "We may investigate and settle any claim or 'suit' as we consider appropriate."

- Doc. 83-1, Exhibit D, WESCO000147

### **Wesco's MCS-90 Funds Are Not Exhausted**

Wesco has not exhausted its MCS-90 limits because no final judgment was entered against Defendant First Time when it paid the Wilson Plaintiffs $750,000 to settle their claims against Defendants Wesco, First Time and Loyola. The following evidence presents genuine issues for trial as to whether Wesco exhausted its MCS-90 obligations to Plaintiff Cagle:

19.

Kent Wilson filed a lawsuit on January 14, 2021, against multiple defendants, including Defendants Loyola and First Time in *Wilson v. Wesco Insurance Company*, Civil Action No. 21-C-00283-S2, State Court of Georgia, Gwinnett County ("the *Wilson* case").

- Exhibit C, Kent Wilson's Complaint.

20.

Mr. Wilson also named Wesco under Georgia's direct action statute, alleging "Defendant WESCO provided liability insurance coverage to Defendant First Time for this collision under Policy Number WMC1650585-00."

- Exhibit C, Kent Wilson's Complaint, ¶15

21.

Mr. Wilson served Wesco with his lawsuit on January 19, 2021.

- Exhibit D, Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default

22.

Wesco did not timely file its answer and went into default.

- Exhibit D, Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default

23.

After Wesco's default, Wesco and Mr. Wilson filed a Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default on March 10, 2021, requesting "an Order permitting them ninety (90) days, through June 7, to mediate or negotiate the claim."

- Exhibit D, Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default

24.

Five days later, on March 15, 2021, the Gwinnett County State Court granted the Joint Motion to Extend Wesco's Time to File Wesco's Motion to Open Default, finding "Defendant Wesco is in default" but providing the parties "ninety (90) days, through June 7, to mediate or negotiate the claim."

- Exhibit E, Order on Joint Motion for Extension of Time for Defendant Wesco to File Motion to Open Default

25.

Wesco and Mr. Wilson scheduled a mediation for May 19, 2021.

- Exhibit K, Affidavit of Andrew Gould, ¶ 5

26.

In Plaintiff Cagle's civil action, on April 12, 2021, Plaintiff's counsel and counsel for Wesco participated in the Rule 26(f) preliminary planning conference in this case.

- Exhibit K, Affidavit of Andrew Gould, ¶ 6

27.

Plaintiff's counsel and counsel for Wesco discussed settlement potential, as required, and noted "a possibility of settlement before discovery."

- Exhibit K, Affidavit of Andrew Gould, ¶ 7

28.

At the Rule 26(f) preliminary planning conference, Defense counsel for Wesco indicated the parties in the *Wilson* case scheduled a mediation at Henning Mediation to take place on May 19, 2021, and invited Plaintiff Cagle and Plaintiff's counsel to the mediation.

- Exhibit K, Affidavit of Andrew Gould, ¶ 8

29.

Plaintiff's counsel informed Wesco's counsel and Henning Mediation that Plaintiff would attend the mediation scheduled for May 19, 2021.

- Exhibit K, Affidavit of Andrew Gould, ¶ 9

30.

Approximately one month later, on May 10, just nine (9) days before the mediation, counsel for Wesco informed Plaintiff's counsel that Plaintiff Cagle and Plaintiff's counsel were not to attend the mediation.

- Exhibit K, Affidavit of Andrew Gould, ¶ 10

31.

Wesco's counsel provided no alternative dates to discuss settlement prior to discovery, as reflected in the Joint Preliminary Discovery Plan.

- Exhibit K, Affidavit of Andrew Gould, ¶ 11

32.

Wesco and Mr. Wilson settled the *Wilson* case at the mediation on May 19, 2021.

- Exhibit K, Affidavit of Andrew Gould, ¶ 12

33.

 On May 25, 2021, following the mediation between Wesco and Mr. Wilson, Wesco and Mr. Wilson filed a Consent Motion for Opening of Default.

- Exhibit F, Consent Motion for Opening of Default

34.

On May 26, 2021, the Court granted the Consent Motion for Opening of Default.

- Exhibit H, Consent Order Opening Default

35.

On May 27, 2021, Wesco filed its Answer in the *Wilson* case.

- Exhibit I, Wesco's Answer in the *Wilson* case

36.

On June 7, 2021, Mr. Wilson and his wife ("the Wilson Plaintiffs") executed a limited liability release releasing Defendants Wesco, Loyola and First Time in exchange for Wesco paying the Wilson Plaintiffs $750,000.

- Doc. 83-1, Exhibit 1 of Exhibit B

37.

Defendant Wesco's MCS-90 endorsement states as follows:

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, **any final judgment recovered** against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.

Doc. 83-1, WESCO000220 (emphasis added).

## **Alternatively, Wesco has not exhausted all the applicable MCS-90 sureties.**

38.

Under the MCS-90 endorsement definitions attached to the Wesco policy, a motor vehicle covered by the MCS-90 endorsement includes any "tractor" or "trailer."

- Doc. 83-1, Exhibit D, WESCO000220

39.

The trailer Defendant Loyola was hauling at the time of the wreck is a commercial motor vehicle, as defined by the Federal Motor Carrier Safety Regulations

- Exhibit B-1, Deposition of John Claxton 30:23-31:11

- 49 C.F.R. § 390.5, which states:

    Commercial motor vehicle means any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle –

    (1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater.

40.

Wesco claims it paid its settlement to Mr. Wilson under its tractor's MCS-90 endorsement.

- Exhibit I, Deposition of John Pecoraro 18:22-25.

This 20th day of October, 2021.

Respectfully submitted,

**TRUCK WRECK JUSTICE, PLLC**

_**/s/ Danny R. Ellis, Esq.**_
Georgia Bar No. 924074
danny@truckwreckjustice.com
1419 Market Street
Chattanooga, TN 37402
Telephone: (423) 265-2020
Fax: (423) 265-2025

**STEWART, MELVIN & FROST, LLP**

_**/s/ Mark Alexander, Esq.**_
Georgia Bar No. 008930
malexander@smf-law.com
**Andrew Q. Gould, Esquire**
Georgia Bar No. 826368
agould@smf-law.com
P.O. Box 3280
Gainesville, GA 30503
Telephone:(770) 536-0101
Fax: (678) 207-2002
_Attorneys for Plaintiff_

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.4.A, I certify that on this date, I served upon the attorneys of record for all parties via email as agreed by all parties in writing under FRCP 5(b)(2)(E) Plaintiff's Response to Defendant Wesco's Statement of Material Facts as to which No Genuine Issues Remain to be Tried in Support of Defendant Wesco's Motion for Summary Judgment.

I further certify that this Certificate of Service of Discovery was prepared in Times New Roman 14pt font and otherwise complies with the Local Rule 5.1 and was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record for all parties.

Brian F. Williams, Esq.
bwilliams@wachp.com
Jonathan M. Adelman, Esq.
jadelman@wachp.com
Waldon Adelman Castilla Hiestand & Prout
900 Cir 75 Pkwy NW, Ste. 1040
Atlanta, GA 30339

*Attorneys for First Time Transport and Isidro Alex Lobaina Loyola*

Reynolds E. Pitts, Jr., Esq.

Robert A. Luskin, Esq.
rluskin@gm-llp.com
Tracy A. Yaun, Esq.
tyaun@gm-llp.com
Goodman McGuffey, LLP
3340 Peachtree Rd. NE, Ste. 2100
Atlanta, GA 30326

*Attorneys for Grange Property & Casualty Insurance Co.*

Terry O. Brantley, Esq.

rpitts@fainmajor.com
Fain, Major & Brennan, PC
5605 Glenridge Dr. NE, Ste. 900
Atlanta, GA 30342

*Attorneys for Progressive Mountain Ins.*
*Co.*

Terry.brantley@swiftcurrie.com
Benjamin Yancey, Esq.
Ben.yancey@swiftcurrie.com
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree St. NE, Ste. 300
Atlanta, GA 30306

*Attorneys for Defendant Old Republic*
*Ins. Co.*

King's Way USA Transport, Inc.
c/o Isabel Cordero
7635 Abbott Ave., Apt 8
Miami Beach, FL 33141
*Pro Se to date*

One Way Hauling Express Company
c/o Isabel Cordero
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

AC Nationwide Transport, LLC
c/o Ariel Calzada
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

Ariel Calzada
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

Isabel Cordero
16213 NW 84th PL
Miami Lakes, FL 33016
*Pro Se to date*

Respectfully submitted on October 20, 2021.

 */s/ Danny R. Ellis*
DANNY R. ELLIS