IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FREDDIE CAGLE,<br><br>   Plaintiff,<br><br>v.<br><br>WESCO INSURANCE COMPANY, KING'S WAY USA TRANSPORT, INC., FIRST TIME TRANSPORT, INC., ISIDRO ALEX LOBAINA LOYOLA, OLD REPUBLIC INS. CO., ONE WAY HAULING EXPRESS CO., AC NATIONWIDE TRANSPORT, LLC, ARIEL CALZADA, and ISABEL CORDERO,<br><br>   Defendants. | Civil Action No.<br><br>2:21-CV-52-RWS |

**ORDER**

This case comes before the Court on Defendant Wesco Insurance Company's ("Defendant" or "Wesco") Motion for Summary Judgment [Dkt. 83]. After reviewing the parties' briefings, the Court enters the following Order.

# BACKGROUND

## I.  Factual Background

This case involves an insurance dispute stemming from a car accident that occurred on July 16, 2019.  In short, the parties disagree over whether Wesco has exhausted its insurance obligations over claims stemming from the accident.

### A. The Parties and Wesco's Insurance Policy to First Time

Mr. Cagle has asserted claims against an array of defendants in this case. Defendant Isidro Alex Lobaina Loyola is a long-haul truck driver from Florida. Defendant King's Way USA Transport, Inc. ("King's Way") is a freight shipping and trucking company and the owner of the tractor and trailer involved in the accident here.  Defendant Isabel Cordero ("Mrs. Cordero") is the president of King's Way, and Defendant Ariel Calzada ("Mr. Calzada") is her husband. Defendants First Time Transport, Inc. ("First Time"), One Way Hauling Express Co. ("One Way"), and AC Nationwide Transport, LLC ("AC Nationwide") are all freight shipping and trucking companies.  Mr. Loyola drove for King's Way, First Time, and One Way, but at the time of the accident, he was driving under the Department of Transportation authority of First Time.  Finally, Defendants Wesco and Old Republic Insurance Co. ("Old Republic") are both insurance companies.

At the time of the accident underlying this case, First Time maintained a Motor Carrier Liability insurance policy with Wesco (the "Policy").[1] As required by federal law, an MCS-90 endorsement was included as an attachment to the Policy. The MCS-90 endorsement provided:

> [Wesco] agrees to pay, within the limits of liability described herein, any final judgment recovered against [First Time] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

The MCS-90 endorsement limits payment to $750,000 "for each accident" involving a vehicle transporting nonhazardous property in interstate commerce.

### B. The Accident and Underlying Litigation

On July 16, 2019, Mr. Loyola was driving a 2014 Freightliner tractor pulling a trailer carrying a load of nonhazardous plastic boxes from South Carolina to

---

[1] The Policy provided that Wesco "will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." However, Mr. Cagle concedes that the Policy was not updated to provide coverage for the tractor, trailer, or driver involved in the accident, and therefore that Wesco is not liable under the Policy for any of Mr. Cagle's damages that First Time must pay.

California. During the trip, Mr. Loyola ran into Kent Wilson's van on Interstate 85 in Jackson County, Georgia. The collision caused the trailer Mr. Loyola was pulling to flip on its side and skid down the interstate toward another vehicle driven by Mr. Cagle. To avoid being hit, Mr. Cagle swerved his car into the median of the interstate, allegedly suffering serious injuries in the process.

On January 14, 2021, Mr. Wilson filed a lawsuit in state court against multiple defendants, including Loyola, First Time, and Wesco. Mr. Wilson and Wesco went to mediation and reached a settlement in May 2021. The parties then entered into a settlement agreement and limited liability release, which stated that Wesco was paying the settlement to Mr. Wilson from its MCS-90 endorsement or surety bond.

**II.    Procedural History**

On March 5, 2021, Mr. Cagle filed this lawsuit, asserting claims for negligent hiring, training, entrustment, retention and maintenance (Counts I and II against King's Way and First Time); negligence (Count III against Mr. Loyola); vicarious liability (Count IV against King's Way and First Time); punitive damages (Count V against King's Way, First Time, and Mr. Loyola); attorney's fees (Count VI against King's Way, First Time, and Mr. Loyola); and a direct action under the Policy (Count VII against Wesco). [Dkt. 1 – Compl.].

On July 7, 2021, Cagle amended his complaint to add several defendants and claims against those defendants. [Dkt. 56 – Am. Compl.]. Cagle's amended complaint asserts claims for negligent hiring, training, entrustment, retention and maintenance (Counts VIII, IX, X, and XI against One Way, AC Nationwide, Mr. Calzada, and Mrs. Cordero); vicarious liability (Count XII against One Way, AC Nationwide, Mr. Calzada, and Mrs. Cordero); illegal brokering (Counts XIII, XIV, and XV against One Way, King's Way, and AC Nationwide); double brokering (Counts XVI, XVII, and XVIII against King's Way, One Way, and AC Nationwide); punitive damages (Count XIX against One Way, AC Nationwide, Mr. Calzada, and Mrs. Cordero); attorney's fees (Count XX against One Way, AC Nationwide, Mr. Calzada, and Mrs. Cordero); and a direct action under an insurance policy (Count XXI against Old Republic). [Id.].

On August 5, 2021, Wesco moved for summary judgment. [Dkt. 83 – Mot. for Summ. J.]. Mr. Cagle opposed Wesco's motion on October 20, 2021. [Dkt. 106 – Pl.'s Opp.], and Wesco filed a reply in support of its motion on November 5, 2021. [Dkt. 110 – Reply in Supp.].

## DISCUSSION

### I.  Legal Standard

The standard for summary judgment is well-established.  Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law.  Id.  An issue is genuine when the evidence is

such that a reasonable jury could return a verdict in favor of the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court will "consider the record and draw all reasonable inferences in the light most favorable to the non-moving party." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). But the court is bound only to draw those inferences which are reasonable. "Where the records taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts").

**II.    Analysis**

Wesco argues that it is entitled to summary judgment on Mr. Cagle's claims against it for several reasons: (1) Mr. Cagle cannot prove that his injuries or damages are covered under the Policy, and (2) Wesco's payment obligations under the MCS-90 bond it issued to First Time have been exhausted. [Dkt. 83-1 – Br. in

Supp. of Wesco's Mot. for Summ. J. ("Wesco's MSJ Br."), at 11-19]. Mr. Cagle concedes that neither the tractor or trailer involved in the accident nor Mr. Loyola himself were specifically listed on Wesco's Policy to First Time, and therefore that the Policy does not cover Mr. Cagle's injuries. [Dkt. 106 – Pl.'s Opp., at 8]. However, Mr. Cagle disputes Wesco's second argument, contending instead that Wesco cannot exhaust the MCS-90 endorsement because the contractual and statutory conditions had not triggered Wesco's obligation to pay, or in the alternative, that Wesco has not exhausted all the applicable MCS-90 sureties. [Id. at 8-18]. The Court will first address the law surrounding the interpretation and application of MCS-90 endorsements, and it will then analyze the parties' positions as to the application and exhaustion of Wesco's MCS-90 endorsement here.

### A. MCS-90 Endorsement

"The Motor Carrier Act of 1980 [MCA], in addition to deregulating the trucking industry and reducing barriers to entry, addressed safety issues and financial responsibility for trucking accidents." Nat'l Specialty Ins. Co. v. Martin-Vegue, 644 Fed. Appx. 900, 906 (11th Cir. 2016) (citation omitted). "In particular, Congress addressed the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." Id. (citation and quotations omitted). The

Act specifically "require[s] certain interstate motor carriers to obtain an insurance policy containing a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence." Waters v. Miller, 560 F. Supp. 2d 1318, 1320 (M.D. Ga. 2008) (citation and quotations omitted). "Motor carriers transporting non-hazardous property [in interstate commerce] must demonstrate financial responsibility of at least $750,000," commonly through an MCS-90 endorsement. Martin-Vegue, 644 Fed. Appx. at 906 (citing 49 C.F.R. § 387.9). In sum, the MCS-90 endorsement is essentially "suretyship by the insurance carrier to protect the public" and "a safety net" that provides recourse from negligent authorized interstate carriers "when other coverage is lacking." Waters, 560 F. Supp. 2d at 1321 (citation and quotations omitted).

The regulations implementing the Motor Carrier Act provide the specific forms required to establish proof of financial responsibility through the MCS-90 endorsement. Martin-Vegue, 644 Fed. Appx. at 906. That endorsement provides that:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the

> financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

Id. (citing 49 C.F.R. § 387.15).

Most courts "treat the insurer's obligation under the MCS-90 endorsement as one of a surety." Id. (citation and quotations omitted). Accordingly, the insurer's payment "obligation is triggered only when: (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent." Id. at 906-07 (citations and quotations omitted).

The parties agree that the Policy that Wesco issued to First Time, to which the MCS-90 endorsement is attached, does not provide liability coverage for the accident in question. There is also no dispute that Mr. Loyola was transporting nonhazardous goods in interstate commerce on behalf of First Time, an interstate motor carrier, at the time of the accident. Accordingly, the dispositive questions are whether Wesco's payment obligation pursuant to its MCS-90 endorsement was triggered and, if so, whether Wesco exhausted that obligation through its settlement with Mr. Wilson.

### B. Whether Contractual and Statutory Conditions Triggered Wesco's Obligation to Pay

Mr. Cagle first argues that Wesco's settlement with Mr. Wilson did not absolve Wesco's obligation under its MCS-90 endorsement because the contractual and statutory conditions had not yet triggered Wesco's obligation to pay. [Dkt. 106 – Pl.'s Opp., at 8]. Mr. Cagle bases this argument on the text of the MCS-90 endorsement itself, contending that because its text states that Wesco "agrees to pay . . . any **final judgment** recovered against the insured," the MCS-90 endorsement is not triggered until there is a final judgment. [Id. at 10-14] (emphasis in original). And, his argument goes, a voluntary settlement between parties does not constitute a "final judgment" and therefore cannot have triggered Wesco's payment obligation under the MCS-90 endorsement here. [Id.]. In other words, "no final judgment was entered in the *Wilson* case that triggered payment under Wesco's MCS-90 endorsement at the time Wesco chose to settle with and pay the Wilson Plaintiffs," and "Wesco's hasty decision to pay the Wilson Plaintiffs and exclude Plaintiff Cagle should not discharge Wesco's responsibility to Plaintiff Cagle." [Id. at 14.].

Mr. Cagle's argument is unsupported by most of the case law. Though the Court has not identified any cases in this circuit that directly addressed this issue, other courts have done so. For example, in Herrod v. Wilshire Insurance

11

Company, the District of Utah rejected the insurer's argument that the Motor Carrier Act required a judgment on the merits, such as an admission of liability or a finding or judgment of negligence, to constitute a final judgment under the MCS-90 endorsement. 737 F. Supp. 2d 1312, 1319 (D. Utah. 2010) (vacated in part on other grounds). Instead, the Court held that "[s]ettlements of actual negligence claims formalized into a consent judgment qualify as a final judgment" because "[t]he Motor Carrier Act requires only a final judgment, not a judgment on the merits." Id. at 1319-20 (citation omitted). Similarly, in T.H.E. Insurance Company v. Larsen Intermodal Services, Inc., the appellant argued that "the MCS-90 only requires an insurer to pay a final judgment in favor of an injured plaintiff, not settlement amounts." 242 F.3d 667, 676 (5th Cir. 2001). The Fifth Circuit soundly rejected that argument, concluding that "[i]f the insurer must pay a final judgment under the MCS-90, there is no reason why it could not seek a favorable settlement rather than risk litigating to a final judgment that could be more onerous." Id.

Other courts have indirectly held that voluntary settlements constituted final judgments under applicable MCS-90 endorsements. See Canal Ins. Co. v. Distrib. Servs., Inc., 320 F.3d 488, 493 (4th Cir. 2003) (concluding that insurer's settlement payment pursuant to its MCS-90 endorsement adequately served the public

12

protection purpose of the MCS-90 endorsement); but see West Wind Exp. v. Occidental Fire & Cas. Co. of N.C, 2012 WL 3006409, at *2-4 (N.D. Ill. July 23, 2012) (applying Seventh Circuit precedent and declining to follow Larsen, instead concluding that voluntary settlements do not trigger the MCS-90 endorsement).

  This Court believes it most prudent to follow the majority of courts that have addressed this issue and find that a voluntary settlement of a plaintiff's claims, even without an admission of liability or judgment of negligence, constitutes a final judgment under an MCS-90 endorsement. This interpretation makes sense because it encourages settlement and the efficient resolution of litigation. Conversely, a finding that a final judgment requires a judgment on the merits (and therefore that a settlement without a determination of liability cannot constitute a final judgment) would disincentivize parties from settling their cases and in turn lead to unnecessary litigation and expenses and an inefficient use of judicial resources.

  Finally, Mr. Cagle highlights the perceived unfairness of this outcome: "Wesco should not be allowed to select a single favored plaintiff then structure settlement proceeds to escape its financial obligations to Plaintiff Cagle" or "unilaterally allocate its minimum financial responsibility to exclude [him] in the absence of a final judgment." [Dkt. 106 – Pl.'s Opp., at 13-14]. The Court does

13

not necessarily disagree that this result may seem unfair. However, Mr. Cagle's position raises a policy issue, not a legal one. Nothing in the text of the Motor Carrier Act requires an insurer to ensure that the $750,000 surety is distributed among multiple plaintiffs for their claims stemming from the same accident. And, similarly, nothing prohibits an insurer from settling a case with one plaintiff for an amount that exhausts the MCS-90 endorsement even though the insurer knows that another plaintiff is also seeking damages resulting from the same accident. Congress could have structured the Motor Carrier Act in a way that avoided these potentially unfair outcomes and provided some measure of financial relief to multiple plaintiffs for their claims stemming from the same accident. But it did not, and this Court cannot interpret and apply the Motor Carrier Act in any way other than how it is written.

Accordingly, the Court finds that Wesco's voluntary settlement with Mr. Wilson constituted a final judgment, thus triggering Wesco's obligation to pay under its MCS-90 endorsement.

**C. Whether Wesco Exhausted Applicable MCS-90 Sureties**

Mr. Cagle alternatively argues that Wesco has not exhausted all the applicable MCS-90 sureties, because the MCS-90 endorsement and obligations apply to *both* the tractor and the trailer that were involved in the accident, such that

Wesco is required to pay the $750,000 surety for each. [Dkt. 106 – Pl.'s Opp., at 14-18]. In other words, "Wesco has two MCS-90 surety bond obligations: one for the tractor and one for the trailer," both of which Wesco has an obligation to pay. [Id. at 17]. And Wesco's settlement payment to Mr. Wilson only exhausted its MCS-90 obligation for the tractor, not its separate and additional MCS-90 obligation for the trailer. [Id. at 17-18].

Mr. Cagle's preferred interpretation and application of Wesco's MCS-90 endorsement is not supported by the text. The MCS-90 endorsement specifically says that "[t]he limits of the company's liability for the amounts prescribed in this endorsement apply separately *to each accident* and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident." [Dkt. 83-6 – Wesco Insurance Policy, at 106] (emphasis supplied). This language makes clear that Wesco's liability under its MCS-90 endorsement is limited to a total of $750,000 for claims stemming from each accident involving its insured, First Time, not $750,000 for each motor vehicle operated by its insured in the accident.

As Wesco correctly points out, the cases cited by Mr. Cagle in support of his argument are inapposite. Neither Herrod v. Wilshire Insurance Company, 499 F. App'x. 753 (10th Cir. 2012), nor Fairmont Specialty Insurance Company v.

15

103012 Ontario, Inc., 2011 WL 3651333 (N.D. Ind. Aug. 19, 2011), held that an MCS-90 endorsement applies to each motor vehicle involved in an accident, such that a single interstate motor carrier could be liable for its $750,000 surety under its MCS-90 endorsement multiple times over if, like here, its tractor-trailer was the cause of the accident.  To the contrary, the courts in these cases held that multiple sureties were available for payment to plaintiffs because multiple interstate motor carriers—and therefore multiple MCS-90 endorsements—were involved.  Each of the carriers was responsible for paying up to the amount specified under its own MCS-90 endorsement, and one carrier's obligation was not terminated simply because another carrier exhausted its own obligation.  Accordingly, although multiple MCS-90 sureties were paid, they were paid by separate motor carriers.  Those cases do not support Mr. Cagle's position.

Here, the MCS-90 endorsement that Wesco attached to the Policy it issued to First Time required Wesco to pay up to $750,000 for "any final judgment recovered against [First Time] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles." [Dkt. 83-6 – Wesco Insurance Policy, at 106].  The endorsement explicitly provided that Wesco's $750,000 liability "appl[ies] separately to each accident."  [Id.].  Both the tractor that Mr. Loyola was driving and the trailer that he was pulling behind the tractor were

clearly involved in the same accident here. Accordingly, Wesco had a total payment obligation of up to $750,000 for all claims against First Time stemming from the accident, not $750,000 for each of the tractor and the trailer that were involved in the accident.

After the accident, in a separate case that stemmed from the same accident, Wesco entered settlement negotiations with Mr. Wilson. Those negotiations resulted in a monetary settlement payment from Wesco to Mr. Wilson that, under its terms, apparently exhausted Wesco's payment obligation under its MCS-90 endorsement. Since Wesco has reached the limits of its MCS-90 endorsement, it has no other financial obligations to Mr. Cagle or any other plaintiff, defendant, or third party. And since it has no other liability or obligation, Wesco is entitled to summary judgment in this case.

## CONCLUSION

For the foregoing reasons, Defendant Wesco Insurance Company's Motion for Summary Judgment [Dkt. 83] is **GRANTED**. Defendant Wesco is hereby **DISMISSED** from this case.

**SO ORDERED** this 6th day of December, 2021.

_____
**RICHARD W. STORY**
United States District Judge